**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VASSELL, et al., | : | **CIVIL ACTION** |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| TRAVIS, et al., | : | **NO.  04-1313** |
| Defendants | : | **[CONSOLIDATED]** |

**MEMORANDUM**

PRATTER, J.                                                                                      AUGUST 31, 2007

Susan and Terry Shaner sued Ronald Vassell and his employer, Cassens Transport

Company ("Cassens" or, collectively, "Defendants") for damage to a restored farmhouse located

on their property purportedly caused by Mr. Vassell's alleged negligence.[1]  The Shaners allege

that the Defendants are liable for, *inter alia*, loss of the value of the farmhouse, costs associated

with repair or replacement of the farmhouse, and loss of their time associated with securing and

repairing the farmhouse.

Cassens initially filed a Motion for Partial Summary Judgment or, alternatively, a motion

*in limine* seeking a limitation on the amount the Shaners may recover in damages.  Specifically,

Cassens seeks to limit any recovery by the Shaners to the diminution in value of their property.

In particular, Cassens seeks to preclude the Shaners from seeking damages or presenting

evidence of damages other than on the basis of comparing the pre-accident and post-accident

---

[1] Three separate lawsuits related to the accident in question were filed: Vassell, et al. v. Travis & Travis N Travis Enters., No. 04-1313; Epting, et al. v. Vassell & Cassens Transport Co. & Travis & Travis N Travis Enters., No. 03-6800; and Shaner, et al. v. Vassell & Cassens Transport Co. & Travis & Travis N. Travis Enters., No. 03-6799.  The Court consolidated the suits under Civil Action No. 04-1313 in May 2005.  Thereafter, the Shaners settled with Timothy Travis and Travis N. Travis Enterprises (the "Travis Defendants") in August 2006.  The Shaners' action against Mr. Vassell and Cassens remains.

market values of their property.  The Shaners oppose the motion.  The Court held an evidentiary hearing and argument on the Motion for Partial Summary Judgment.  However, prior to any ruling on that Motion, Cassens filed a Motion for Full Summary Judgment.

Cassens moves for summary judgment on the ground that, pursuant to Pennsylvania's "one satisfaction" rule, the Shaners' settlement with the Travis Defendants constitutes full satisfaction of their claim.  Cassens acknowledges that it still may be liable to its co-defendants to the extent the Travis Defendants pursue their cross claim against Cassens, but maintains that Cassens can have no exposure to the Shaners because the Shaners already have been fully compensated.  Resolution of the Motion for Full Summary Judgment depends on the Court's ruling with respect to the Motion for Partial Summary Judgment concerning the appropriate measure of damages because the Court must determine whether the Shaner-Travis settlement fully compensated the Shaners for their loss.  For the reasons discussed more fully below, the Court will deny both motions because material issues remain to be decided by a jury.

## I.    Factual Background

On May 19, 2003, Mr. Vassell was driving a commercial car carrier eastbound on Route 78 pursuant to his employment with Cassens.  At the same time, Mr. Travis was also driving another car carrier eastbound on Route 78 pursuant to his employment with Travis N Travis Enterprises.  The carrier operated by Mr. Travis dropped a car, which came to a stop in the eastbound lanes of Route 78.  The carrier operated by Mr. Vassell collided with the dropped car and then went off the road into the Shaners' house.  At the time, the Shaners were renting the house to the Epting family.

2

## II.      Pennsylvania's "One Satisfaction" Rule

Under Pennsylvania law, "although a plaintiff may obtain a judgment against several tort-

feasors for the same harm, he or she is entitled to only one satisfaction for that harm." Brandt v.

Eagle, 602 A.2d 1364, 1367 (Pa. Super. Ct. 1992). "[T]he 'one satisfaction' rule bars a

subsequent suit against another tortfeasor only where the prior proceedings can reasonably be

construed to have resulted in a full satisfaction of the plaintiff's claim." Greenleaf v. Garlock,

Inc., 174 F.3d 352, 357 (3d Cir. 1999) (quoting Frank v. Volkswagenwerk, 522 F. 2d 321, 324-

26 (3d Cir. 1975)). Thus, a settlement with less than all tortfeasors may give rise to full

satisfaction. Id. To determine whether a plaintiff has been fully satisfied through a settlement

"involves a highly factually sensitive analysis of 'the circumstances of the prior settlement to see

whether the satisfaction . . . represented the true value of the claim.'" Id. (quoting Frank, 522

F.2d at 326). The party asserting "one satisfaction" bears the burden of providing the Court with

"record evidence of the circumstances surrounding the settlement." Id.

The "one satisfaction" rule is most frequently applicable in cases where the plaintiff's

injury is a quantifiable and certain sum. Thus, where a jury could find that the remaining

defendant is liable, and that damages exceed the amount of the prior settlement, the "one

satisfaction" rule does not preclude further recovery by the plaintiff. See Hess v.

Commonwealth, 868 A.2d 1283, 1285 (Pa. Commw. Ct. 2005). In Hess, the Court held that the

plaintiffs had "*not* necessarily been compensated in full for their injuries" by a prior settlement.

Id. In that case, the court declined to apply the "one satisfaction" rule to prevent further recovery

after a settlement with one of the defendants, reasoning that "[b]ecause there has been no trial,

there has been no determination of liability or the amount of damages, if any, due Plaintiffs. A

jury may find that the [defendant] is not liable for any damages, or it may determine that the damages exceed [the amount of the prior settlement]."

In the present case, the applicability of the "one satisfaction" rule at this pre-trial stage of the proceedings depends upon the measure of damages used to determine the value of the Shaners' claim, and upon whether the parties agree as to the relevant figures. The appropriate measure of damages is the subject of Cassens's earlier Motion for Partial Summary Judgment and remains in dispute.

## II.    Appropriate Measure of Damages

There are two possible measures of damages applicable to determine the value of the Shaners' claim and, thus, to determine whether the Shaners' settlement with the Travis Defendants fully compensated the Shaners.

First, under the standard rule in Pennsylvania, "the general measure of damages for permanent harm to real property is the diminution in market value attributable to the conduct, product, or instrumentality giving rise to liability . . . ." Pennsylvania Dep't of Gen. Servs. v. United States Mineral Prods. Co., 898 A.2d 590, 595 (Pa. 2006) (citing Lobozzo v. Adam Eidemiller, Inc., 263 A.2d 432, 437 (Pa. 1970)). In situations in which the harm is repairable, "damages are assessed according to the lesser of the cost of repair or the market value of the affected property." Id. (citing Lobozzo, 263 A.2d at 437, n.6).[2]

_____

[2] The standard rule looks to whether the harm is "permanent" or "repairable," and determines the measure of damages accordingly. If the harm is "permanent," the measure of damages is diminution in value (the difference between pre-accident market value and post-accident market value of the property). Here, Cassens estimates that the diminution would amount to $125,000; the Shaners estimate $250,000. If the harm is repairable, the measure of damages is the lesser of the cost of repair or market value. Here, Cassens estimates pre-accident value to be $474,000; the Shaners estimate it to be $730,000. The Shaners estimate the cost of

Second, the Pennsylvania Supreme Court, recognizing an exception to the standard rule, permits under certain circumstances a cost-of-repair theory of damages even where the damage is permanent or where the cost of repair exceeds the actual value of the property.  The exception applies where, due to some unique feature of the property, market value is difficult or impossible to ascertain.  A cost-of-repair theory of damages is generally justified where "construction costs may be the only reasonably available indicator of value."  Mineral Prods. Co., 898 A.2d at 599.

For example, in Department of Transportation v. Estate of Crea, 483 A.2d 996 (Pa. Commw. Ct. 1977), the Pennsylvania Commonwealth Court permitted a cost-of-repair theory of damages where the defendant drove his car into the superstructure of a public bridge, causing it to collapse.  Id. at 1002.  The court reasoned that because there is no market demand for property in the public domain, any attempt to determine the bridge's market value would be "wholly speculative, the very pitfall to be avoided in proof of damages."  Id. at 1001.  The court found the lack of determinable commercial value dispositive in permitting the "reasonable cost of replacement" as the measure of damages.  Id.

Discussing the application of Crea, the Pennsylvania Supreme Court recently emphasized that it has not "categorically and immutably confined special-purpose valuation and/or the relevance of replacement or reproduction costs to instances in which market valuation is impossible."  Mineral Prods. Co., 898 A.2d at 598 n.6.  In Mineral Products, the Pennsylvania Supreme Court held that although the government-owned building in question had an

---

repair to be $783,000.  At least with respect to the Shaners' estimate of the cost of repair, the market value of the property is less than the cost to repair the farmhouse.  Therefore, under the circumstances presented here, the measure of damages under the standard rule for repairable harm would be the market value of the property, a valuation that is in dispute.

ascertainable market value, its "unique attributes," including its public purpose and its location

on the Capitol campus rendered it a special-purpose property warranting consideration of the

costs of reproduction and/or replacement in the calculation of damages.  See also Romesberg v.

Caplan Iron & Steel Co., 122 A.2d 53, 54 (Pa. 1956) (directing that damages for wrongful

demolition of a building dedicated to crushing stone were to be calculated based on the "cost of

restoration of the structure to its condition immediately before the demolition began").

Indeed, the Pennsylvania Supreme Court "has rejected fixed and formulaic rules when it

is determined that they are not setting an appropriate, compensatory standard," and has

recognized the "many nuances and significant latitude associated with valuation for the purpose

of calculating damages."  Id. at 600.  The rational justifying a cost-of-repair theory of damages

"hinges on the recognition that, in the absence of comparable properties in the marketplace or

income generated by the property in question, construction costs may be the only reasonably

available indicator of value."  Id. at 599.[3]  Thus, under certain circumstances, "an appropriate

compensatory standard" may trump bright-line rules.  Id. at 600.

## III.    Discussion

Here, Cassens argues that the Shaners' property is subject to valuation in the market and,

therefore, no exceptions or special considerations apply.  Any unique or historic value of the

farmhouse, contends Cassens, would be incorporated into the price of the real estate.[4]  Cassens

---

[3] If replacement or reproduction costs are presented as a measure of damages, the Court must also require the jury to consider depreciation, including such factors as "obsolescence, deterioration, damage, and similar matters that may confront owners of an aged structure." Mineral Prods. Co., 898 A.2d at 600.

[4] Cassens urges the Court to focus on the entire property as a whole, rather than on the individual farmhouse as a separate entity to be valued itself.  Noting the other attributes of the

6

also submits that the burden is on the Shaners to produce verification of the "true" market value

of the real estate and/or farmhouse.  While Cassens contests the alleged "historic" nature of the

house, Cassens nonetheless emphasizes that any "historic" value of the house should be

incorporated into the value of the real estate as a whole and, therefore, that the Court should

value the property in this way as well.  Thus, for purposes of this argument, Cassens seems to

concede that the structure may be special in some way, but denies that this translates into a value

that can be differentiated from the value of the property as a whole.

The Shaners respond that the cost of repair is the appropriate measure of damages

regardless of whether the harm is permanent or repairable because the house, allegedly built in

1790, is an "historic farm house" with "unique value."  Emphasizing the earlier extensive work

and cost of restoring the farmhouse (approximately $91,000, <u>see</u> Affidavit of Susan Shaner), as

well as its historic value, the Shaners argue that the circumstances presented here require

application of the <u>Crea</u> rule.  Focusing on the value of the farmhouse in terms of the cost of

repair, without reference to the value of the property as a whole, the Shaners maintain that

measuring damages by the diminution in value of the property will not adequately compensate

them for the damage to the farmhouse.

The Court recognizes that measuring damages by either the diminution in value (if the

harm is "permanent") or the full market value (if the harm is "repairable") may not adequately

---

property, which were not harmed in the accident, such as a cell phone tower and a large garage
out of which the Shaners operate a trucking business, Cassens contends that the value of the
farmhouse itself cannot be separated from the value of the parcel as a whole.  However, framing
the issue this way is less than helpful because the question of valuation of the house as distinct
from the property essentially begs the question of whether there is anything special about the
house to warrant application of a cost-of-repair theory of damages (which necessarily
distinguishes the entity to be repaired from the real estate on which it is situated).

compensate the Shaners for their avowed attachment to the farmhouse, given its purportedly significant age and the resources originally spent on its restoration.  Nonetheless, there are comparable properties on the market and the farmhouse, like the real estate on which it sits, has an ascertainable value.  Thus, it cannot be said that the cost of repair is "the only reasonably available indicator of value."  See Mineral Prods. Co., 898 A.2d at 599.  While the market value of the property as a whole may not reflect the value of or expenditures attendant to the Shaners' restoration efforts, it does reflect the value of the house as restored, including income earned from the house in the form of rent receipts.  Likewise, the diminution in the value of the property as a result of the house's destruction *should* reflect the loss of any value attributable to the house. The Shaners have not presented any evidence thus far to justify finding some additional value of the house independent of the property on which it is situated that would not be reflected in the market value (e.g., if the market does not value "historic" houses).  Therefore, the Court concludes that the standard rule governing the appropriate measure of damages applies.[5]

The inquiry, however, does not end there.  The standard rule provides different measures of damages for "permanent" and "repairable" harm.  See Mineral Prods. Co., 898 A.2d at 596.  If the damage to the farmhouse is characterized as "permanent," the appropriate measure is diminution in value.  Id.  If, on the other hand, the damage is characterized as "repairable," the appropriate measure of damages is the lesser of the cost of repair or "the market value of the

---

[5] However, nothing in this decision precludes the Shaners from presenting, or the jury from considering, evidence of the farmhouse's allegedly "historic" nature in the context of ascertaining the pre-accident and post-accident values of the property or for purposes of determining the diminution in value.

affected property."[6]  Id.

The classification of damage as "permanent" or "repairable" requires a fact-intensive inquiry.  In Duquesne Light Co. v. Woodland Hills Sch. Dist., 700 A.2d 1038 (Pa. Commw. Ct. 1997), after an exhaustive review of Pennsylvania law, the Pennsylvania Commonwealth Court set forth the following factors for courts to consider in determining whether a harm is "permanent":

> In keeping with the purpose of compensatory damages and in prevention of windfall awards, we find it necessary to interpret "permanency" in terms of whether or not the cost of repair would be unfair or inappropriate under the circumstances. Where the cost of repair is shown to be reasonable, the injury to real property is not permanent and the cost of repair would be the appropriate measure of damages. However, where the cost of replacing the real

---

[6] The full market value boundary was called into question in Mineral Products Company, when the Pennsylvania Supreme Court noted that

> several of this Court's decisions prior to Lobozzo had advanced the proposition, commonly applied in a number of other jurisdictions, that the general measure of damages for the reparable harm to realty is the lesser of the repair costs or the *diminution in* market value caused by the defendant's conduct, product, or instrumentality. [Appellant's] argument suggests the colorable position that Lobozzo's formulation bounding costs of repair by full market value (as opposed to diminution in market value) is not grounded in legal reasoning developed by the Court, but rather, appears to stem from a misreading of the seminal decision in Rabe v. Shoenberger Coal Co., 62 A. 854 (1944), and has been perpetuated in subsequent cases.

Mineral Prods. Co., 898 A.2d at 596 n.4.  Cassens contends that the Pennsylvania Supreme Court "strongly suggested" that diminution in value is the appropriate standard to apply.  However, notwithstanding what may have been suggested in a footnote, the Pennsylvania Supreme Court did not decide the question, and stated "market value" as the current standard, which therefore is the standard this Court will apply.  See Adams v. Madison Realty & Dev., Inc., 853 F.2d 163, 168 (3d Cir. 1988) (federal court is not free to shape state common law as it sees fit); Tidler v. Eli Lilly & Co., 851 F.2d 418, 424 (D.C. Cir. 1988) (the court's role "is to apply the current law of the appropriate jurisdiction, and leave it undisturbed").

> property in its original condition disproportionately exceeds the
> diminution in the value of the property, the injury to real property
> is permanent and the cost of repair would not be fair or
> appropriate. Rather, the proper measure of damages for permanent
> injury would be the difference between the value of the property
> before and after the harm. *Whether or not an injury to real
> property is "permanent" is an issue for the trier of fact.*

Id. at 1053 (emphasis added).

Cassens argues that where a house is completely destroyed – that is, where repairs would require a new structure to be built – the harm is "permanent" and, therefore, the measure of damages should be the diminution in value. Specifically, Cassens contends that here the damage is "permanent" *as a matter of law* because the estimated cost of repair ($783,000[7]) is so "grossly disproportionate" to the diminution in value ($125,000[8]). These figures are indeed at far ends of a continuum. However, Cassens does not address the Pennsylvania Supreme Court's specific direction that permanency of harm should be determined by the trier of fact, and has not provided the Court with any case law demonstrating circumstances where this issue may be decided as a matter of law.

For their part, the Shaners do not explicitly argue that the harm is "repairable"; nor do they explicitly concede that it is "permanent." Rather, the Shaners state that the accident caused "significant damage" to the farmhouse, which they seem bent on repairing. (Pl. Response to Mot. for Partial S.J. 4.) In her affidavit, Mrs. Shaner states that the house was "badly damaged" in the accident but that she intends to "refurbish the home back to its original condition." (Affidavit of Susan Shaner at ¶¶ 6, 7.) The report of the Shaners' expert indicates that repair and

---

[7] As estimated by the Shaners' expert. (See Pl. Response to Mot. for Full S.J. Ex. 1.)

[8] As estimated by Cassens's expert. (See Def. Mot. for Partial S.J. Ex. B).

reconstruction of the existing structure is possible.  (<u>See</u> Pl. Response to Mot. for Full MSJ Ex.

1.)

Essentially, the question of whether the cost of repair is reasonable or appropriate under

these circumstances depends on the accurate value of the property, as well as a comparison

between the cost of repair and the diminution in value.  Given the conflicting expert reports

presented here, the Court concludes that there is a genuine issue of material fact as to whether the

damage to the farmhouse should be characterized as "permanent" or "repairable."[9]  While the

estimated cost of repair, $783,000, greatly exceeds the Shaners' estimation of the diminution in

value, $250,000, the Court declines to conclude as a matter of law that the harm is

"permanent."[10]  Thus, Cassens's Motion for Partial Summary Judgment must be denied.

Because the determination of the appropriate measures of damages and of the accurate

pre- and post-accident values of the property depends upon resolution of disputed issues of fact,

the "true value" of the Shaners' claim remains unknown at this juncture.  Thus, the Court cannot

determine whether the Shaners have been "fully satisfied" as a result of their settlement with the

Travis Defendants.  Accordingly, the Court will deny Cassens's Motion for Full Summary

Judgment because, at this pre-trial stage of the proceedings, the "one satisfaction" rule does not

*necessarily* preclude further recovery by the Shaners.

----

[9] Cassens states that "both plaintiffs and moving defendant concede there is 'permanent' damage to the house in question" (Def. Mot. For Partial S.J. 4), but the arguments presented by the Shaners are not consistent with the Defendants' characterization.

[10] Moreover, even if a jury determines that the damage is "repairable," it must award the *lesser* of the market value and the cost of repair.  By any estimate thus far presented, it appears that the market value of the property is less than the cost of repair.  Therefore, in the event the damage is classified as "repairable," the Shaners would be awarded no more than the market value of the property.

**IV.     Conclusion**

Under the circumstances presented here, the determination of the proper measure of damages depends upon whether the damage to the farmhouse is classified as "permanent" or "repairable," a factual issue that must be left for the jury.  Accordingly, the Motion for Partial Summary Judgment is denied.  Because there is a factual dispute as to the value of the Shaners' claim, the Court cannot conclude, as a matter of law, that the Shaners have been fully satisfied. Therefore, the Motion for Full Summary Judgment is also denied.  An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VASSELL, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TRAVIS, et al.,** | : | **NO.  04-1313** |
| **Defendants** | : | **[CONSOLIDATED]** |

## ORDER

AND NOW, this 31st day of August, 2007, upon consideration of the Motion for Full Summary Judgment of Defendant Cassens Transport Company (Docket No. 53 filed under Civil Action No. 04-1313) and Plaintiffs' response in opposition thereto (Docket No. 56), it is hereby ORDERED that the Motion is DENIED.  The Motion for Partial Summary Judgment of Defendant Cassens Transport Company (Docket No. 32 filed under Civil Action No. 03-6799, which has since been consolidated with the above-captioned action) is also DENIED.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge